IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:18cv475-MHT |
| | ) | (WO) |
| CALHOUN HUNTING CLUB AND | ) | |
| LOUNGE, TERRY BAITY, and | ) | |
| TIFFANY MILLER, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

Plaintiff Scottsdale Insurance Company filed a complaint against defendants Calhoun Hunting Club and Lounge, Terry Baity, and Tiffany Miller, seeking a declaration that the insurance company had no duty to defend or indemnify the club and Baity (the club's owner) in a lawsuit brought by Miller in state court. This matter is now before the court on Baity's and Miller's motions to dismiss for lack of subject-matter jurisdiction. After thorough review of the law and the record, the court concludes that those motions should be

granted and that this case should be dismissed in its entirety.

## I.  JURISDICTION

Scottsdale Insurance Company invokes the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, asserting that the parties are completely diverse and the amount in controversy is over $ 75,000.  Baity and Miller contend that the case is not properly in federal court because Miller is not claiming over $ 75,000 in her state-court action.[1]  For the reasons discussed below,

---

    1.  Baity, separately, contends that the insurance company is a citizen of Alabama because "it does business here" and thus the parties are not diverse.  This argument can be quickly dispatched.  For diversity purposes, a corporation is a citizen of every State in which it is incorporated and the State where it has its principal place of business.  *See* 28 U.S.C. §1332(c)(1).  A corporation's principal place of business is the place where its officers direct, control, and coordinate its activities--its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  The insurance company has established it is a citizen of Ohio (where it is incorporated) and Arizona (where it has its principal place of business).

the insurance company has not satisfied its burden to prove by a preponderance of the evidence the required jurisdictional amount.

## II. BACKGROUND

This case arises out of a 2016 shooting at Calhoun Hunting Club and Lounge in Letohatchee, Alabama. A security guard at the club fired five to six shots into a car occupied by Nakia Rivers and Miller. Rivers was killed in the incident. Rivers's estate brought claims against, among others, the club and its owner Baity. Pursuant to a commercial-liability insurance policy, Scottsdale Insurance Company paid $ 300,000, the full aggregate limit of the policy, in settlement of the estate's claims against the club.

After the insurance company settled with Rivers's estate, Miller (the driver of the vehicle) sued the club and Baity in state court, seeking an unspecified amount of compensation for severe mental anguish, emotional

3

distress, and damages to her vehicle. She also included a claim for punitive damages in an unspecified amount. She did not name the insurance company as a defendant.

Scottsdale Insurance Company then filed this federal lawsuit pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, seeking a declaration that it had paid the full $ 300,000 sum of the general aggregate limit of its policy with Calhoun Hunting Club and thus had no further duty to defend or indemnify the club or Baity in connection with Miller's suit. As stated, Baity and Miller moved to dismiss this declaratory-judgment action for lack of subject-matter jurisdiction.

### III.  DISCUSSION

"Federal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  A plaintiff seeking to invoke a federal court's diversity jurisdiction must establish that the amount in controversy exceeds $ 75,000.  *See* 28 U.S.C. § 1332(a).

4

"**When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.**" *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000).

In general, the plaintiff's allegation that the amount in controversy is met must be taken as true, *see Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014), and may be dismissed only if it appears "to a legal certainty" that the claim does not exceed $ 75,000. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). But where, as here, jurisdiction is based on a claim for indeterminate damages (such as nonmonetary relief), the "'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional

minimum." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).

"[W]hen an insurer seeks a judgment declaring the absence of liability under a policy, the value of the declaratory relief to the plaintiff-insurer is the amount of *potential* liability under its policy." *First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 F. App'x 861, 865 (11th Cir. 2016) (emphasis in original) (citing *Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976)). Such potential liability includes not only the amount of the claim against the insured for which the insurer may be liable, but also the costs of defending an underlying action against the insured. *See Stonewall*, 544 F.2d at 199.

### A. *Face Value of the Policy*

Scottsdale Insurance Company argues the face value of the policy--$ 300,000--"should be considered in determining the amount in controversy." Sur-Reply in

Opposition to Motion to Dismiss (doc. no. 30) at 4.  For its argument, the insurance company cites *Koester v. State Farm Ins. Co.*, No. 7:12-cv-02528-JEO, 2012 WL 5265783, at \*4 (N.D. Ala. Oct. 22, 2012) (Ott, M.J.) (citations omitted), which held that "the face value of the policy generally controls where the parties' dispute involves either the validity of the policy itself ... , or coverage for claims that appear to put the face amount of the policy at issue."

*Koester* cited two cases in support of this conclusion: *C.E. Carnes & Co. v. Employers' Liability Assurance Corp.*, 101 F.2d 739 (5th Cir. 1939), and *Guardian Life Insurance Co. of America v. Muniz*, 101 F.3d 93 (11th Cir. 1996) (per curiam).  In *Carnes*, the plaintiff-insurer sought a declaration that its policy covering insured's truck did not extend to hauling butane gas.  101 F.2d at 740.  The court held that the amount in controversy "is not ... what individual defendants claim by way of damages. ... The amount in controversy

is the value of that which is sought to have declared free from doubt--the policy for $25,000." *Id.* at 741. In *Guardian Life*, the plaintiff-insurer sought a declaration invalidating a life-insurance policy because it was obtained through fraud. 101 F.3d at 94. The court held that, in that case, the face value of the policy "constituted the jurisdictional amount." *Id.*

The Eleventh Circuit Court of Appeals clarified the scope of *Carnes* and *Guardian Life* in *Friedman v. New York Life Insurance Co.*, 410 F.3d 1350, 1357 (11th Cir. 2005). In *Friedman*, the court stated that the face value of the insurance policy controlled in those cases because "each involved a dispute about the validity of the policy or the scope of coverage for a claim that put the face amount of the policy at issue." *Id.* at 1357; *see also Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 911 (5th Cir. 2002) ("We do not read [*Carnes*], as Hartford urges, to announce a rule that the policy limits determine the amount in controversy. *Carnes* simply held that numerous

individual claims against an insurer may be aggregated to reach the policy limit."). Other courts of appeal have stated the same principle more explicitly: The face value controls only where the validity of the policy is disputed or the value of the underlying claims exceeds the policy limits. *See Hartford*, 293 F.3d at 911; *Budget Rent-A-Car v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (citing 14A Charles A. Wright et al, 14A *Fed. Prac. & Proc.: Jur.* § 3710 (2d ed. 1985)).

This principle makes sense because, in both of those situations, the face value of the entire policy is actually *in* controversy. In the case of a dispute about the validity of the entire policy, the face value is in controversy because a judicial determination as to the entire policy's validity would settle whether the insured has a right to coverage in the full amount stated in the insurance contract. In the case of underlying claims that exceed the policy limits, the face value is in controversy because, if the claimant is successful, the

insured will look to the insurer for indemnification in the full amount stated in the contract.

The situation may be different when "the question is the applicability of the policy to a particular occurrence." Charles A. Wright et al., 14AA *Fed. Prac. & Proc.: Jur.* § 3710 (4th ed. 2008 & Supp. 2018). When the issue is "the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim--not the face amount of the policy." *Hartford*, 293 F.3d at 911 (quoting Charles A. Wright et al, 14B *Fed. Prac. & Proc.: Jur.* § 3710 (3d ed. 1998)); *accord Friedman*, 410 F.3d at 1357 ("Where, as here, there is no controversy involving the face value of the policy, but only with regards to certain premiums, it would make no sense to consider the policy's face value to be the amount in controversy."); *Toler v. State Farm Mut. Auto. Ins. Co.*, 25 F. App'x 141, 143 (4th Cir. 2001) ("A court should not, however, automatically equate the value of

[underlying] claims with the policy limits of the coverage."). The full amount of the policy is not being sought by the injured party, so the full amount is not actually in controversy.

As one court noted, adopting the theory that the amount in controversy "is determined by the amount of coverage applicable to the claim of the defendant ... would be authority for asserting federal jurisdiction in any declaratory judgment suit involving a liability insurance policy with applicable coverage over [the jurisdictional threshold] no matter how small the claim actually being made." *Queens Ins. Co. of Am. v. Basham*, 201 F. Supp. 733, 737 (W.D. Tenn. 1962) (Brown, J.).

Here, the face value of $ 300,000 is not actually in controversy; the validity of the insurance contract is not in dispute. Nor do the injured party's underlying claims exceed the policy limits. Rather Scottsdale Insurance Company states, and no party appears to contest, that it discharged its insurance obligations to

Calhoun Hunting Club with respect to the 2016 shooting when it tendered the full amount of the $ 300,000 aggregate policy limit in satisfaction of Rivers's estate's claims. Since the insurance company already paid those claims, the claims are no longer in controversy and cannot be said to put the face value of the policy at issue.

All that remains in controversy is Miller's claims. The insurance company's argument boils down to the assertion that its insurance obligations toward Calhoun Hunting Club have already been fulfilled and thus the policy does not oblige the insurance company to defend or indemnify the club with respect to Miller's claims; that is, that the policy does not apply to Miller's claims. Accordingly, it is the value of Miller's claims--not the face value of the policy--that is the measuring stick for the amount in controversy. *See Hartford Ins. Grp.*, 293 F.3d at 911; Charles A. Wright

et al., 14AA *Fed. Prac. & Proc.: Jur.* § 3710 (4th ed. 2008 & Supp. 2018); *accord Friedman*, 410 F.3d. at 1357.

If anything, *Koester* undermines the insurance company's position; *Koester* simply reaffirms that the face value generally controls only where the validity of the policy is in dispute or the claims exceed the policy limits. *See Koester*, 2012 WL 5265783, at *4. Otherwise, the court simply looks to the value of the claims actually in controversy. *See id.* And, as explained in the following sections, it is clear from the record here that the value of the claims in controversy--that is, Miller's claims--is nowhere near the $300,000 policy limit.

## B. *Scottsdale Insurance Company's Expected Defense Costs*

Scottsdale Insurance Company correctly asserts that the potential costs of defending Miller's lawsuit must be considered in determining the amount in controversy. *See Stonewall*, 544 F.2d at 199. Where it founders, however, is in its failure to provide evidence of what

those defense costs will be.  It submits an affidavit showing that it hired a lawyer to defend Calhoun Hunting Club and its owner Baity at a rate "in excess of $ 100 per hour" and paralegals at a rate "in excess of $ 50 per hour," plus reasonable third-party costs such as those incurred in taking depositions. Brief in Opposition to Motion to Dismiss (doc. no. 23-1).  It also recites a litany of standard litigation tasks it will have to perform with respect to the Miller suit.[2]  It does not submit, however, how much it has already paid in defense costs or how much, with an educated guess, it expects to pay.

In the absence of such evidence, the court will not speculate as to the amount, especially when the insurance company is in the best position to estimate its own defense costs.  *Compare SUA Ins. Co. v. Classic Home*

---

2.  As Miller correctly notes, because at least some discovery was done in the Rivers lawsuit (which named the same defendants and was based on the same occurrence), the insurance company has less factual ground to cover in this suit than it otherwise would.

*Builders, LLC*, 751 F. Supp. 2d 1245, 1256 (S.D. Ala. 2010) (Steele, J.) (declining to make a "wild guess" under similar facts as to the amount of attorney's fees), *with QBE Ins. Grp., Ltd. v. Automax USA, Inc.*, No. 7:12cv02519-LSC, 2013 WL 12253572, at *2 (N.D. Ala. Mar. 22, 2013) (Coogler, J.) (affidavit from insurance adjuster estimating total defense costs provided ample evidence, "more than mere speculation," that insurer would incur the costs as stated in the affidavit). The court therefore finds that the insurance company has not met its burden to prove its defense costs by a preponderance of the evidence.

### C. *Miller's Claimed Damages*

This court turns next to Scottsdale Insurance Company's contention that the value of Miller's claims in state court exceeds $ 75,000. For the following reasons, Miller's claims do not exceed the threshold amount required to invoke this court's jurisdiction.

In her state-court complaint, Miller claims damages in an unspecified amount for severe mental anguish and emotional distress, property damage to her vehicle, and punitive damages. Notably, she claims no physical injuries as a result of the incident.

As stated, the insurance company carries the burden of proving damages by a preponderance of the evidence. *See Federated Mut. Ins. Co.*, 329 F.3d at 807. For its argument that the amount in controversy is met, it cites a number of cases in which the Alabama Supreme Court affirmed jury awards in excess of $ 75,000 in compensation for emotional distress where there were no physical injuries. *See, e.g.*, *Orkin Exterminating Co. v. Jeter*, 832 So. 2d 25 (Ala 2001); *Alabama Power Co. v. Murray*, 751 So. 2d 494 (Ala. 1999); *Delchamps, Inc. v. Bryant*, 738 So. 2d 824 (Ala. 1999).

But the Eleventh Circuit has warned against trying to predict what a state court will award when determining the amount in controversy. *See Federated Mut. Ins. Co.*,

329 F.3d at 809 ("[M]ere citation to what has happened in the past does nothing to overcome the indeterminate and speculative nature of Federated's assertion in this case."). Without any evidence as to the severity of Miller's emotional distress, the court declines the invitation to divine what a state-court jury might award her for such.

The insurance company also points to the damages to Miller's car, which it says "increase the amount in controversy by several thousand dollars." Response to Motion to Dismiss (doc. no. 23) at 6. It does not, however, provide any evidence of the extent of the damages to the car. What's more, Miller represents that the evidence will show that she paid between $ 200 and $ 300 to replace her rear window and that her parents cleaned the interior of the passenger seat where Rivers was sitting when she was shot. *See* Reply to Brief in Opposition to Motion to Dismiss (doc. no. 26) at 3.

Without evidence as to the amount of damages to the vehicle, the court again declines to speculate.

Finally, the insurance company makes much of the fact that Miller claims punitive damages. It correctly states that punitive damages must be considered when determining the amount in controversy, "unless it is apparent to a legal certainty that such cannot be recovered." *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987). But the insurance company's policy plainly excludes punitive damages from coverage. *See* Exhibit A to Complaint (doc. no. 1-1) at 88. Accordingly, it appears to a legal certainty that punitive damages cannot be recovered against Scottsdale. *See SUA Ins. Co.*, 751 F. Supp. 2d at 1255 (holding that a policy exclusion of punitive damages is captured by the "legal certainty" rule). The court will therefore not consider Miller's claim for punitive damages in determining the amount in controversy.

In any event, Miller has sufficiently stipulated that she will not seek or accept more than $ 50,000 in the state-court lawsuit.  She represented to this court that she will "limit her claim against the defendants in her Lowndes County case to $ 50,000," and amend her *ad damnum* clause accordingly.  Reply to Brief in Opposition to Motion to Dismiss (doc. no. 26) at 5.  In its sur-reply, the insurance company responded that such a representation is not binding and thus ineffective to keep this case out of federal court. *See* Sur-reply Brief (doc. no. 30).  Miller then filed a sur-reply to the insurance company's sur-reply, stating in unequivocal terms that her "agreement to limit her state court claim to $ 50,000 is binding on her," she will be "estopped to claim more" than $ 50,000 in her state-court action, and she has "waived her right to sue for more than $ 50,000." Sur-reply to Sur-reply Brief (doc. no. 32).[3]

---

3. The insurance company has filed a motion to strike Miller's sur-reply to its sur-reply because she did not first ask for leave of the court.  By separate order, the

The court credits these representations as bona fide. As an officer of the court, Miller's counsel is "subject to sanctions under Federal Rule of Civil Procedure 11 for making a representation to the court for an improper purpose, such as merely to defeat diversity." *Federated Mut. Ins. Co.*, 329 F.3d at 808. The court, therefore, "give[s] great deference to such representations and presume them to be true." *Id.* At the same time, the court reminds both parties that it retains jurisdiction

---

motion will be denied. There is case law that, ordinarily, "[s]ur-replies can only be filed with leave of court and are ordinarily stricken if no such leave is requested or received." *Mobile Cty. Water, Sewer & Fire Prot. Auth., Inc. v. Mobile Area Water & Sewer Sys., Inc.*, No. 1:07-cv-0357, 2007 WL 3208587, at *5 n.10 (S.D. Ala. Oct. 29, 2007) (Steele, J.). But there is also case law that the court still has discretion to consider an improperly filed sur-reply, especially when "no conceivable prejudice" to the other party could result. *Kerns v. Sealey*, 496 F. Supp. 2d 1306, 1310 n.5 (S.D. Ala. 2007) (Steele, J.). The court has no reason to think the insurance company will be prejudiced by consideration of Miller's improperly filed sur-reply. The court further finds that consideration of the sur-reply is warranted because, as explained in the main text, the sur-reply bears significantly on the extent to which Miller's amount-in-controversy stipulation is binding.

to hear a motion for Rule 11 sanctions even after the case on which it is based has been dismissed for lack of jurisdiction. *See id.* at 808 n.6 (noting in a declaratory judgment action that when the plaintiff in the underlying suit stipulates that the amount in controversy is less than $75,000 and the case is dismissed, "a motion for Rule 11 sanctions involves a collateral proceeding that can be initiated and decided after the case on which it is based is finally resolved and no longer pending"); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990). Should Miller renege on her promise, upon motion to this court, "sanctions will be swift in coming and painful upon arrival." *Pickett v. Michigan Mut. Ins. Co.*, 928 F. Supp. 1092, 1093 (M.D. Ala. 1996) (De Ment, J.). For these reasons, the court finds that the amount in controversy does not exceed $ 75,000, and this is case should be dismissed as to Baity and Miller.

### D. Calhoun Hunting Club

Calhoun Hunting Club has not formally appeared in this case. Scottsdale Insurance Company represents that the club is operated by Baity as an unincorporated sole proprietorship with "no legal existence separate from Baity." Compl. (doc. no. 1) at 1. Evidence in support of this allegation may be found in Baity's conflict disclosure statement, which states that he owns the club. *See* Conflict Disclosure Statement (doc. no. 16). The summons for the club was returned executed on May 24, 2018, and was personally served on Baity. *See* Summons and Proof of Service (doc. no. 3) at 2 Baity was also served in his individual capacity at the same time. *See* Summons and Proof of Service (doc. no. 4) at 2. However, Baity's attorney stated in his notice of appearance that he was representing Baity individually; no indication was made whether he was also representing Calhoun Hunting Club. *See* Notice of Appearance (doc. no. 14).

But Alabama law "makes no distinction between an individual and a sole proprietorship operated by the individual. They are considered the same for legal purposes." *Ex parte Hughes*, 51 So. 3d 1016, 1018 (Ala. 2010). Accordingly, the court has treated Baity's motion to dismiss as a motion on behalf of Calhoun Hunting Club as well and, therefore, will also dismiss this case as to the club. If any of the parties disagrees with this treatment of the club, that party can file a motion, within 10 business days, asking for reconsideration of this issue.

\*\*\*

For the foregoing reasons, the motions to dismiss will be granted and the case dismissed in its entirety without prejudice for lack of subject-matter jurisdiction.

23

An appropriate judgment will be entered.

DONE, this the 26th day of December, 2018.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE